**UNITED STATES of America,**

v.

**Robert CORREA and Shelton Lewis.**

**No. CR. 99–10416–EFH.**

United States District Court,
D. Massachusetts.

July 26, 2001.

Donald L. Cabell, United States Attorney's Office, Boston, MA, for plaintiff.

Kevin J. Reddington, Law Offices of Kevin J. Reddington, Brockton, MA, for Robert Correa, defendant.

## MEMORANDUM AND ORDER

HARRINGTON, Senior District Judge.

In a three-count indictment, Defendants Robert Correa and Shelton Lewis are charged with violating Title 18 U.S.C. § 922(g)(1), which prohibits felons from possessing firearms; Title 18 U.S.C. § 1951(a), which prohibits interference with commerce by means of force; and Title 18 U.S.C. § 924(c) which prohibits the use of a firearm in a crime of violence. Defendant Robert Correa filed a Motion to Suppress physical evidence seized from his home at 282 North Montello Street, second floor apartment, in Brockton, Massachusetts, and from a vehicle parked behind the dwelling on September 8, 1999.[1] Specifically, the Defendant Correa seeks suppression of three weapons found on a porch shelf adjacent to the kitchen, a bag of ammunition and various articles of clothing and footwear found in the closet of a pantry adjacent to the kitchen, masks, gloves and several pieces of rope found in the pockets of the clothing, and a stash of money found in the glove compartment of the vehicle. After an evidentiary hearing and oral argument on the matter, the Court rules that the Motion to Suppress is denied.

The relevant facts of the search and seizure are as follows. On the evening of September 7, 1999 Brockton Police Sergeant Kiley and Officer Frank Walls were in Brockton on routine patrol in an unmarked police car. After making a routine traffic stop, Sergeant Kiley recognized the driver from previous dealings, including at least one occasion when the driver provided the police with accurate, independently corroborated information related to an ongoing criminal investigation. In the course of their interaction, the driver told Sergeant Kiley that within the previous 72 hours he had seen three weapons at Defendant Robert Correa's home at 282 North Montello Street, a site that Sergeant Kiley testified he knew to be under investigation for a series of robberies known as the "Restaurant Robberies." The confidential informant ("CI") described the three weapons with specificity, identifying them as a "Mac Ten" semiautomatic, a Colt 45, and a 9 millimeter Ruger, all "fully loaded." The CI also described the location of the weapons and the ammunition inside the dwelling, indicating a shelf in the kitchen. In order to verify the reliability of the informant, the officers then observed the informant execute a "controlled buy" of marijuana from a known drug dealer. Further, the officers presented the informant with a photo array from which he identified the Defendant Robert Correa. Sergeant Kiley and Officer Walls then prepared an affidavit in support of a search warrant for 282 North Montello Street. Satisfied with the informant's credibility and reliability, a magistrate issued a warrant authorizing a nighttime, "no-knock" search of 282 North Montello Street for the three described weapons and "[a]ny and all related property in violation of MGL 269–10."

Early in the morning on September 8, 1999, at approximately 3:30 A.M., Sergeant Kiley and several other officers executed the search warrant, entering 282 North Montello Street after knocking down the

---

1. In the Motion to Suppress filed with the Court the defendant also sought suppression of all of the statements he made to the police after his arrest and of physical evidence seized by the police from the defendant's person after his arrest. However, the defendant did not pursue this aspect of his motion at the hearing or the subsequent oral argument. Assuming such suppression would be based on a ruling that the search, seizure, and resulting arrest were unlawful, the Court will address suppression of that evidence after ruling on the legality of the original search, seizure and arrest.

front door with a battering ram. The Defendant Robert Correa was asleep in the bedroom and was the only person present in the apartment. According to police procedure, the defendant was restrained while officers searched the premises. There is conflicting testimony about the order in which the various items were seized, but no contradiction as to what items were seized and where they were found. Sergeant Kiley opened the kitchen door to a porch area where he saw a duffel bag on a shelf. He opened the bag and found the three weapons described by the informant and specified in the warrant. About the same time, Detective Reardon opened a closet in a pantry next to the kitchen. He observed several black hooded sweatshirts, black pants, assorted other clothing hanging on hooks in the closet and black boots on the floor of the closet. Detective Reardon also observed a brown paper bag on a shelf in the closet. He took the bag from the shelf, looked inside and discovered three boxes of ammunition. Detective Reardon took the ammunition into the kitchen and presented it to Sergeant Kiley who placed it on the kitchen table and instructed Reardon to continue searching the closet. Detective Reardon testified that he returned to the closet, after the guns and ammunition had been discovered, and began to examine the clothing in the closet. According to Reardon, he noticed vegetation and debris stuck on the boots, and that the clothing was wet. This was significant to Reardon because the robbery of the Abington Ale House, the most recent of the so-called "Restaurant Robberies," had taken place on the previous night during a heavy rain storm. Reardon testified that he "patted down" the clothing as it hung from hooks in the closet, and then again after taking the clothing from the closet to the kitchen. While the clothing was still in the closet, he felt a soft bulge in the pockets and reached into the pockets. Detective Reardon testified that when he removed the "bulky" items from the pocket he did not believe they were either guns or ammunition. Indeed, Detective Reardon found wet gloves, a ski mask and several pieces of white rope, in one-to two-foot increments.

After finding the guns and ammunition, the officers arrested Defendant Correa, read him his Miranda rights, and secured the premises while they sought a second search warrant for the clothing and footwear. Trooper Brooks prepared an affidavit in support of a search warrant for "[a]ll of the clothing articles located in the kitchen closet" and specifically itemized "a black pair of men's polo jeans, two black hooded sweatshirts, three pairs of gloves, a pair of black sweatpants, a black pair of ¾ high work boots, a black nylon ski mask, a black zip-up athletic jacket, and a black nylon head rag." The magistrate issued a warrant authorizing a search for those items.

After acquiring this second warrant, Trooper Brooks executed the search of the clothing and footwear in the presence of four other troopers and Detective Reardon. Trooper Brooks later filed a return indicating the items seized as: "a green hooded sweatshirt with 2 silk-like hood, a black hooded sweatshirt having a front pocket containing blk. mask and gloves in pocket, a black hooded champion sweatshirt having front pocket containing cut white clothes line rope in same, black Tommy Hilfilger jeans, black Timberland work boots size 8½, black Adidas zip Jacket and one pair of black Easton Athletic gloves, and white clothes line rope."

Meanwhile, the defendant had been taken to the police station where he was again read his Miranda rights. After talking with the police, the defendant was allowed to make a telephone call. He

placed an operator-assisted call, and with an officer standing nearby, in full view of the defendant, the defendant told the person on the other end of the line to go to a car parked behind his residence at 282 North Montello Street, break the window, and remove a stash of money from the glove compartment of the car. Approximately ten minutes later, a female approached the vehicle with a 2 × 4 piece of wood and tried to break the window by hitting it three times. She was prevented from doing so by police who were still at the premises. An affidavit was then prepared and a search warrant was obtained for a 1993 Honda, Massachusetts license plate 5306 FE. The warrant authorized a search of the car, specifically for "currency ... obtained in the commission of a crime." The search was conducted by Trooper Brooks who found and seized a white plastic produce bag containing $4,501.00 in U.S. currency locked in the glove box.

The defendant argues that all evidence seized from his home and from the car outside of his home should be suppressed because the original search warrant was not supported by probable cause, as it was issued without adequate indicia of the confidential informant's credibility. In the alternative, if the original warrant is found valid, the defendant urges that only the initial search, uncovering the guns and ammunition, is valid and the subsequent search and seizure of the clothing and its contents exceeded the scope of the authorized search.

■ The Fourth Amendment requires that a search warrant be supported by probable cause. Probable cause exists "when the affidavit upon which the warrant is founded demonstrates, in some trustworthy fashion, the likelihood that an offense has been committed and there is some sound reason to believe a particular

search will turn up evidence of it." *United States v. Schaefer*, 87 F.3d 562, 565 (1st Cir.1996), quoting *United States v. Aguirre*, 839 F.2d 854, 857–58 (1st Cir. 1988). The magistrate must look to the totality of circumstances in the appraisal of probable cause. *See Illinois v. Gates*, 462 U.S. 213, 230–31, 238, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983); *United States v. Figueroa*, 818 F.2d 1020, 1023–24 (1st Cir. 1987). As the Supreme Court has stated, "[t]he task of the issuing magistrate is simply to make a practical, common sense determination whether, given all of the circumstances set forth in the affidavit ... there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Illinois v. Gates*, 462 U.S. 213, 238, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983). Where the information set forth in the affidavit is provided by an informant, sufficient facts must be presented in the affidavit to permit the magistrate to make an independent determination of important factors such as the informant's credibility and his basis of knowledge. *United States v. Schaefer*, 87 F.3d 562, 567 (1st Cir.1996); *see also Illinois v. Gates*, 462 U.S. 213, 238, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983).

■ Here, the uncontroverted testimony of Sergeant Kiley that the informant was known to have provided "accurate" information that "has been independently corroborated to assist in extending an ongoing police investigation," as well as a current independent corroboration of his reliability through a controlled drug purchase, clearly established the credibility and reliability of the informant sufficient to permit the magistrate's issuance of the warrant. Further, the CI provided the police with a highly specific description of the weapons and ammunition, as well as their specific location, as he had just observed the guns and ammunition in the

apartment 72 hours previously. The level of detail supplied by the CI's personal observation and first-hand description secured a reasonable belief that contraband or evidence of a crime could be found at 282 North Montello Street. *See United States v. Taylor*, 985 F.2d 3, 6 (1st Cir. 1993) (noting that information from even a first-time informant is sufficient where affidavit provides adequate basis for evaluating informant's veracity through the very specificity and detail with which it relates the informant's first-hand description of the place to be searched); *United States v. Cochrane*, 896 F.2d 635, 641 (1st Cir.), *cert. denied*, 496 U.S. 929, 110 S.Ct. 2627, 110 L.Ed.2d 647 (1990) ("[A]n important indicia [sic] of reliability is the fact that the informant's knowledge was based upon personal observation."). The Court rules that the first warrant was supported by probable cause.

▪ The next issue is whether Officer Reardon exceeded the scope of the warrant in his search of the clothing. There is no violation in his observation of the clothing, nor in his pat-down of the clothing. Not only was the clothing in "plain view" in the area to be searched, but the warrant permitted the police to search for the specified firearms and "[a]ny and all related property in violation of MGL 269-10." The scope of the warrant thus authorized the search of the entire apartment at 282 North Montello Street in any place where guns or ammunition could reasonably be found. *See United States v. Ross*, 456 U.S. 798, 820-21, 102 S.Ct. 2157, 72 L.Ed.2d 572 (1982) ("[a] lawful search of fixed premises generally extends to the entire area in which the object of the search may be found and is not limited by the possibility that separate acts of entry or opening may be required to complete the search."); *United States v. Gray*, 814 F.2d 49, 51 (1st Cir.1987) (an item "situat-ed within residential premises which are the subject of a validly-issued warrant may be searched if it is reasonable to believe that the container could conceal items of the kind portrayed in the warrant.").

In this context, it is irrelevant whether Detective Reardon believed the bulky items in the front pocket of one of the hooded sweatshirts contained guns or ammunition. The fact that ammunition could have been found in the front pocket was sufficient to justify the search. Under the Supreme Court's decision in *Whren v. United States*, 517 U.S. 806, 116 S.Ct. 1769, 135 L.Ed.2d 89 (1996), the relevant inquiry is not what Detective Reardon knew or suspected was inside the pockets, but whether a valid warrant to search the area existed. As the Supreme Court stated, "[n]ot only have we never held, outside the context of inventory search or administrative inspection ... that an officer's motive invalidates objectively justifiable behavior under the Fourth Amendment; but we have repeatedly held and asserted the contrary." *Whren v. United States*, 517 U.S. 806, 812, 116 S.Ct. 1769, 135 L.Ed.2d 89 (1996).

When Detective Reardon felt the "bulky" items in the pocket of the clothing, which he had previously observed in "plain view," it was reasonable for him to then search the pocket to determine whether any ammunition had been secreted there. A bullet is a very tiny object. In making this pocket search for ammunition, he retrieved the masks, gloves and rope from the pocket and was then able to observe these items in "plain view."

▪ Once the officers saw the gloves, mask and pieces of rope, they were authorized to seize them if their incriminating nature was immediately apparent. *See United States v. Giannetta*, 909 F.2d 571, 578 (1st Cir.1990) ("The plain view doctrine allows police to seize the object,

even though it is not specified in the warrant, if two requirements are met.... First, if the police have a prior justification for being in a position to see the item in plain view [and] ... [s]econd, the incriminating nature of the item [is] immediately apparent."). Sergeant Kiley testified that he was aware of the circumstances of the robbery the night before, including the clothing worn by the perpetrators and their use of short strands of rope to restrain the victims. Probable cause supported a plain view seizure as "a practical, non-technical probability that incriminating evidence is involved is all that is required." *Id.* at 579. In an excess of caution, the officers sought a second warrant to search and seize the clothing. Certainly probable cause supported this second warrant where the officers had already found guns that matched the description of those used in the armed robbery the night before and the officers uncovered clothing and rope that similarly matched the victims' description of that used in the robbery.

■ Finally, the defendant seeks to suppress the hair, fiber, and bodily fluid samples he provided to the police after his arrest, the statements he made in the presence of police, and the money found when the police searched the car parked behind his home at 282 North Montello Street. The defendant did not pursue these issues in the hearing or in the oral argument, presumptively because such suppression would be based, in large part, on a ruling by the Court that the original warrant was not supported by probable cause and thus all evidence seized in subsequent searches would be "fruit of the poisonous tree." Because the Court has ruled that there was probable cause for the initial warrant, as well as for the second warrant, the Court denies the Defendant's Motion to Suppress physical evidence and statements made to the police after the defendant's arrest.

It is clear that there was probable cause for the issuance of the search warrant for defendant's car. The defendant had no reasonable expectation of privacy in the phone call he made from the police station, while under the visible watch of a police officer. The information he supplied to the police as he talked on the telephone, combined with the police officer's independent observation of the woman attempting to break into the car, supported the magistrate's finding of probable cause.

The Defendant's Motion to Suppress is Denied in its entirety.

SO ORDERED.