SYLLABUS

This syllabus is not part of the Court's opinion. It has been prepared by the Office of the Clerk for the convenience of the reader. It has been neither reviewed nor approved by the Court. In the interest of brevity, portions of an opinion may not have been summarized.

**State v. Rasheem W. McQueen (A-11-20) (084564)**

**Argued March 1, 2021 -- Decided August 10, 2021**

**ALBIN, J., writing for a unanimous Court.**

The Court considers whether the right of privacy, safeguarded by the New Jersey Constitution, extends to an arrestee's call on a police line from the stationhouse when neither party to the call is aware that the police are recording their conversation.

Rasheem McQueen was arrested after driving off when Piscataway police officers attempted to stop him for traffic violations. At police headquarters, McQueen was permitted to make a call on a landline in the "report writing room." No one told him the call would be recorded -- as were all outgoing calls from headquarters. No sign was posted warning that all calls were recorded. No one stood over McQueen to listen to the conversation, and he "mumbled on the phone, hiding what his conversation was."

Later that day, a detective recovered a gun found outside the home near where McQueen had been stopped and became "suspicious" about the call McQueen had made from headquarters. Without securing a warrant or a subpoena, or consent from McQueen, detectives listened to McQueen's recorded conversation. The recording revealed that McQueen called Myshira Allen-Brewer and told her to look for his "blicky" -- apparently a slang name for a handgun -- near where the gun was found.

McQueen was transferred to the Middlesex County Adult Correction Center (Correction Center), from where he made further telephone calls to Allen-Brewer on a clearly designated recorded line. During telephone calls placed from the Correction Center, an automated message advises the parties that their conversation is being recorded, and inmates receive written notification of the warning as well. In their conversations, McQueen again told Allen-Brewer to look for the "blicky." A recording of those Correction Center conversations was secured through a grand jury subpoena.

Both McQueen and Allen-Brewer were indicted on multiple counts, and both moved to suppress their telephone conversations recorded by the Piscataway Police Department and the Correction Center. The motion judge suppressed the recorded calls and dismissed the indictment against Allen-Brewer.

1

The Appellate Division reversed the suppression of the Correction Center calls and reinstated the charges against Allen-Brewer. The panel, however, split on the legality of the seizure of the police station call, with the majority affirming the suppression of that call.

The Court granted the State's motion for leave to appeal from the appellate panel's affirmance of the suppression of the police station call, 244 N.J. 244 (2020), but denied Allen-Brewer's cross-motion seeking a declaration that the Correction Center calls were the "fruit" of the unlawfully recorded police station call, 244 N.J. 245 (2020).

**HELD:** The right of privacy, and particularly privacy in one's telephone conversations, is among the most valued of all rights in a civilized society. McQueen's custodial status in the stationhouse did not strip him of all constitutional protections. Article I, Paragraph 7 broadly protects the privacy of telephone conversations in many different settings. McQueen and Allen-Brewer had a reasonable expectation of privacy in their conversation in the absence of fair notice that their conversation would be monitored or recorded. The recorded stationhouse telephone conversation was not seized pursuant to a warrant or any justifiable exigency and therefore must be suppressed.

1. To determine whether Allen-Brewer had a constitutionally protectible privacy interest in her conversation with McQueen, the Court considers whether Allen-Brewer had a reasonable expectation of privacy in that call and, if she did, whether the non-consensual and warrantless recording of and listening to her conversation by law enforcement officers violated the constitutional right to be free from unreasonable searches and seizures. Noting the lack of certainty in this area of federal law, the Court turns to the broader protections afforded under Article I, Paragraph 7 of the State Constitution in analyzing whether McQueen and Allen-Brewer possessed a reasonable expectation of privacy in the police station call. (pp. 17-19)

2. The telephone is an essential instrument in carrying on personal affairs, and there is a general societal assumption that the people and places one calls on a telephone, no less than the resulting conversations, will be private. The place where such a call is made does not matter, be it home, office, hotel, or even public phone booth. What a person seeks to preserve as private, even in an area open to the public, may be constitutionally protected, and a person does not lose the right to the privacy of a telephone call simply because he made his calls from a place where he might be seen. (pp. 19-21)

3. A police station's "report writing room" is not an area open to the public, and legitimate security concerns must be taken into account in the setting of a stationhouse. Few would dispute that an arrestee has a lesser expectation of privacy within the confines of a police station. A police station, however, is not a constitution-free zone. Clearly, an arrestee cannot make a call from a stationhouse phone line without the authorization of the police. When permission is given, however, the State does not suggest that the police

have a right to record and listen to an arrestee's stationhouse call to his attorney. And, of course, the phone lines are not used exclusively by arrestees. No empirical evidence has been presented to support that there is a general understanding that all outgoing phone lines from a police station are recorded or that social norms instruct that an expectation of privacy in a police station call is not one that "society is prepared to recognize as reasonable." See State v. Evers, 175 N.J. 355, 369 (2003). (pp. 21-23)

4. Upon review of the cases on which the State relies, the Court finds no support for the proposition that the general public is aware that a call made by a civilian on an outgoing line can be recorded without notice, or that a call that cannot be overheard by an officer through natural means loses a reasonable expectation of privacy because of a non-consensual recording on a police line. In this case, no police officer heard through the use of the naked ear either side of the conversation. The surreptitiously recorded conversation in this case does not fall within the ambit of the so-called "plain hearing" exception to the warrant requirement. And the holding in State v. Jackson that the defendant-inmates had no reasonable expectation of privacy in their calls was premised on two critical factors: the correctional facilities' legitimate security interests and the notice given to inmates that their calls might be recorded and monitored. See 460 N.J. Super. 258, 276 (App. Div. 2019), aff'd, 241 N.J. 547 (2020). (pp. 23-28)

5. The Court concludes that, under Article I, Paragraph 7 of the New Jersey Constitution, an arrestee has a reasonable expectation of privacy in a call made from a police station in the absence of notice that the conversation may be monitored or recorded. First, police monitoring of telephone conversations -- without consent, a warrant, or other appropriate judicial authorization -- empowers the government to arbitrarily peer into the most private sanctums of people's lives in violation of the privacy protections afforded by Article I, Paragraph 7. Second, the State has provided no factual support and scant judicial authority for the notion that New Jersey's residents have a widespread understanding that all outgoing telephone calls from a police station are recorded. Third, requiring notice of recording does not undermine and may enhance institutional security and public safety by deterring the unlawful use of the stationhouse line. Fourth, the right to notice of monitoring or recording accords with basic notions of fairness and decency. Fifth, the fruits of an unlawful search cannot provide an after-the-fact justification for the search. Sixth, McQueen and Allen-Brewer had an expectation of privacy in their conversation that "society is prepared to recognize as reasonable." Evers, 175 N.J. at 369. The Court explains that Allen-Brewer's expectation of privacy is largely derivative of McQueen's privacy right. See id. at 370. (pp. 28-32)

6. The Court's holding that McQueen and Allen-Brewer enjoyed a reasonable expectation of privacy in the police station call means that the Piscataway police had to comply with the warrant requirement of Article I, Paragraph 7, in the absence of one of the specifically established and well-delineated exceptions to the warrant requirement, such as consent or exigent circumstances. Here, the Piscataway police did not secure

3

either a warrant for the seizure of the recorded conversation or McQueen's or Allen-Brewer's consent to monitor or record their call. Nor has the State attempted to justify the seizure based on exigent circumstances. Therefore, the McQueen/Allen-Brewer stationhouse conversation must be suppressed. (pp. 32-33)

7. Police departments that record or monitor outgoing calls of arrestees must give them reasonable notice of that practice. Reasonable notice may be satisfied in different ways. For example, the police could have an arrestee read and sign a form that explains the practice or could post a prominent sign by the telephone. Any forms or signs employed to provide notice must take account of language differences, and attorney conversations may not be monitored. (p. 33)

**AFFIRMED and REMANDED to the trial court.**

**CHIEF JUSTICE RABNER and JUSTICES LaVECCHIA, PATTERSON, FERNANDEZ-VINA, SOLOMON, and PIERRE-LOUIS join in JUSTICE ALBIN's opinion.**

4

# SUPREME COURT OF NEW JERSEY
## A-11 September Term 2020
### 084564

State of New Jersey,

Plaintiff-Appellant,

v.

Rasheem W. McQueen,

Defendant,

and

Myshira T. Allen-Brewer,

Defendant-Respondent.

On appeal from the Superior Court,
Appellate Division.

| Argued | Decided |
|--------|---------|
| March 1, 2021 | August 10, 2021 |

David M. Liston, Assistant Prosecutor, argued the cause
for appellant (Yolanda Ciccone, Middlesex County
Prosecutor, attorney; David M. Liston, of counsel and on
the briefs).

Tamar Y. Lerer, Assistant Deputy Public Defender,
argued the cause for respondent (Joseph E. Krakora,
Public Defender, attorney; Tamar Y. Lerer, of counsel
and on the briefs).

1

Sarah C. Hunt, Deputy Attorney General, argued the
cause for amicus curiae Attorney General of New Jersey
(Andrew J. Bruck, Acting Attorney General, attorney;
Sarah C. Hunt, of counsel and on the brief).

Tess Borden argued the cause for amicus curiae
American Civil Liberties Union of New Jersey (American
Civil Liberties Union of New Jersey Foundation,
attorneys; Tess Borden, Alexander Shalom, and Jeanne
LoCicero, on the brief).

Denise Alvarez argued the cause for amicus curiae
Association of Criminal Defense Lawyers of New Jersey
(Pashman Stein Walder Hayden, attorneys; Denise
Alvarez, on the brief).

Jonathan Romberg argued the cause for amicus curiae
Seton Hall University School of Law Center for Social
Justice (Seton Hall University School of Law Center for
Social Justice, attorneys; Jonathan Romberg, of counsel
and on the brief).

JUSTICE ALBIN delivered the opinion of the Court.

The right of privacy -- the right to be free from government officials arbitrarily prying into our personal conversations -- is one of the preeminent rights in our constitutional hierarchy. Article I, Paragraph 7 of the New Jersey Constitution provides heightened protection to telephone calls and prohibits government eavesdropping, absent a warrant or an exception to the warrant requirement. This case tests whether the right of privacy, safeguarded by our State Constitution, extends to an arrestee's call on a police line from the

stationhouse when neither party to the call is aware that the police are recording their conversation.

The police arrested Rasheem McQueen for allegedly committing certain offenses and brought him to the police station, where he gave a statement to an investigating detective. The police permitted McQueen to make a telephone call from one of the stationhouse's landlines but did not tell him his conversation would be recorded or accessible to law enforcement without his consent or a warrant. McQueen called and spoke with defendant Myshira Allen-Brewer. The next day, a detective retrieved the recording and listened to their private conversation. Based, in part, on the contents of that conversation, Allen-Brewer was charged with various crimes.

The trial court suppressed the McQueen/Allen-Brewer telephone conversation, finding that the warrantless retrieval and use of that recording violated Allen-Brewer's statutory and constitutional privacy rights. In a split decision, the Appellate Division panel upheld the suppression of the telephone conversation on Fourth Amendment grounds only, concluding that McQueen and Allen-Brewer enjoyed a reasonable expectation of privacy.[1]

---

[1] Only Allen-Brewer's appeal is before this Court.

We affirm. The right of privacy, and particularly privacy in one's telephone conversations, is among the most valued of all rights in a civilized society. See Doe v. Poritz, 142 N.J. 1, 100 (1995); see also Olmstead v. United States, 277 U.S. 438, 478 (1928) (Brandeis, J., dissenting).

McQueen's custodial status in the stationhouse did not strip him of all constitutional protections. The police provided McQueen and Allen-Brewer with no notice that their conversation would be recorded or monitored. Article I, Paragraph 7, which prohibits unreasonable searches and seizures, broadly protects the privacy of telephone conversations in many different settings. We hold that McQueen and Allen-Brewer had a reasonable expectation of privacy in their conversation in the absence of fair notice that their conversation would be monitored or recorded. The recorded stationhouse telephone conversation was not seized pursuant to a warrant or any justifiable exigency and therefore must be suppressed.

We remand for proceedings consistent with this opinion.

I.

A.

On August 27, 2018, at approximately 10:55 p.m., while on patrol in an unmarked vehicle, three Piscataway Township detectives observed an Oldsmobile Sierra Cutlass traveling at a high rate of speed and turn without

signaling.[2] The detectives activated the patrol vehicle's overhead lights and siren, but the Oldsmobile continued on and ran through a stop sign until it eventually pulled over in front of 1640 Quincy Street.

One of the detectives approached the Oldsmobile's open passenger side window and "immediately recognized" the driver as someone he knew to be the registered owner of the car -- defendant Rasheem McQueen. The detective "advised [McQueen] to turn the car off[,] [t]hrow the keys out the window[,] and put his hands in the air." Instead, McQueen "put the car into gear and took off." The detectives did not give chase because of the public-safety risk and because they knew the identity of the driver.

Shortly afterwards, McQueen's grandfather called 9-1-1 to report that McQueen's car had been stolen, and McQueen told the dispatcher the same. The three detectives then went to McQueen's residence, arrested him, and transported him to the Piscataway police headquarters.

At headquarters, at approximately 12:11 a.m., Detective Carlos Alameda interviewed McQueen, who admitted that he fled the scene and falsely reported his car as stolen. McQueen also told the detective where he had parked his

---

[2] The record before us is based on the transcripts of two days of grand jury testimony and police reports contained in the State's supplemental appendix to this Court. No testimony was taken at the hearing on the motion to suppress.

5

car.[3] McQueen "insisted" on making a telephone call and was permitted to do so on a landline in the "report writing room." No one told McQueen that his call would be recorded -- as were all outgoing calls from headquarters. No sign was posted warning that all calls were recorded. No one stood over McQueen to listen to the conversation.

McQueen made the call at around 4:00 a.m. on August 28, before he was transferred to the Middlesex County Adult Correction Center (Correction Center). According to Detective Joseph Reilly, the call was made "in Detective Alameda's presence," and "[McQueen] was very mumbled on the phone, hiding what his conversation was."

Later that day, at about 1:00 p.m., Detective Reilly responded to a report of a gun found on the lawn at 1650 Quincy Street, the home next door to the address where McQueen had been stopped the previous evening. There, on the lawn, Detective Reilly recovered a loaded .38 caliber revolver, with one spent shell in the cylinder. The serial number on the handgun was defaced.

After the recovery of the gun, Detective Reilly became "suspicious" about the call McQueen had made earlier in the morning from headquarters. Without securing a warrant or a subpoena, or consent from McQueen,

---

[3] A later search of McQueen's car uncovered an oxycodone pill.

Detective Reilly and Detective Sergeant Michael Coffey listened to McQueen's recorded conversation.[4]

The recording revealed that McQueen called his girlfriend, eighteen-year-old Myshira Allen-Brewer. During the conversation, McQueen told Allen-Brewer to look for his "blicky" -- apparently a slang name for a handgun -- on the side yard of a house in an area on Quincy Street. He gave her directions to the location and told her that unless she found the "blicky" first "he would be in a lot of trouble."[5]

While at the Correction Center, McQueen made telephone calls to Allen-Brewer on a clearly designated recorded line. During telephone calls placed from the Correction Center, an automated message advises the parties that their conversation is being recorded. Additionally, inmates at the Correction Center receive a pamphlet informing them that their "calls may be monitored and recorded except calls to the Internal Affairs Unit and legal telephone calls." In their conversations, McQueen again told Allen-Brewer to look for the "blicky." She responded that she had tried and could not find it. He told

---

[4] Neither a recording of the conversation nor a transcript of it was made part of the record. Our understanding of that conversation comes from the grand jury testimony of Detective Reilly and Detective Sergeant Coffey.

[5] The State represented in its brief and at oral argument that, during the conversation, McQueen told Allen-Brewer that he was "locked up."

her to return to the scene and search the grass because he had thrown it "fairly far."

The Middlesex County Prosecutor's Office secured the recording of those Correction Center conversations through the issuance of a grand jury subpoena.

B.

A Middlesex County grand jury returned a multi-count indictment against McQueen and Allen-Brewer. We recite only the charges against Allen-Brewer, whose appeal is before us: second-degree conspiracy to unlawfully possess a handgun, N.J.S.A. 2C:39-5 and 2C:5-2; third-degree attempted hindering by attempting to suppress evidence that might aid in the apprehension or prosecution of McQueen, N.J.S.A. 2C:29-3(a)(3) and 2C:5-1; and fourth-degree attempted obstruction of the administration of law or a government function, N.J.S.A. 2C:29-1(a) and 2C:5-1.

Allen-Brewer and McQueen both moved to suppress their telephone conversations recorded by the Piscataway Police Department and the Correction Center. The motion judge suppressed the recorded calls, finding that the State had not complied with the dictates of the New Jersey Wiretapping and Electronic Surveillance Control Act (Wiretap Act), N.J.S.A.

8

2A:156A-1 to -37.  The judge also relied on his written unpublished decision in State v. Jackson.[6]

The judge suppressed the calls from the Correction Center particularly because the Wiretap Act does not authorize the Prosecutor's Office to issue "a subpoena duces tecum to retrieve jail calls from a correctional facility."  The judge also suppressed the call from police headquarters primarily based on his interpretation of the Wiretap Act.  He determined that although McQueen had a diminished expectation of privacy in his location -- police headquarters -- he still retained an expectation of privacy in his telephone conversation, in the absence of notice that his call would be recorded.  The judge stated that "[p]hone calls have always been different" and found no exception in the Wiretap Act permitting the interception of the McQueen/Allen-Brewer call "without prior authorization," such as a warrant or consent.

---

[6]  The Appellate Division later reversed that decision, which suppressed the recorded conversations of the defendant-inmates who made calls from two county correctional facilities.  460 N.J. Super. 258 (App. Div. 2019), aff'd, 241 N.J. 547 (2020).  The Appellate Division rejected the motion judge's holding that the recording of inmate calls violated the New Jersey Wiretap Act, Title III of the Federal Omnibus Crime Control and Safe Streets Act of 1968, 18 U.S.C. §§ 2510 to 2520 (Federal Wiretap Act), and Article I, Paragraph 7 of the New Jersey Constitution.  See id. at 266, 268-69.

9

Because the suppression of the evidence against Allen-Brewer left the State without the means to prosecute her, the motion judge dismissed the indictment against her.

The Appellate Division granted the State's motions for leave to appeal from the orders suppressing the evidence against Allen-Brewer and McQueen and dismissing the indictment against Allen-Brewer.

C.

In an unpublished per curiam opinion, a three-judge panel of the Appellate Division reversed the suppression of the Correction Center calls and reinstated the charges against Allen-Brewer. The panel held that neither the Federal Wiretap Act nor the New Jersey Wiretap Act barred the interception, recording, or production by grand jury subpoena of the Correction Center calls between McQueen and Allen-Brewer. The panel relied on the decision in Jackson, 460 N.J. Super. 258, in finding that a detainee at the Correction Center, such as McQueen, is placed on notice that his telephone conversations will be recorded and may be overheard. The panel therefore reasoned that McQueen and Allen-Brewer had no justifiable expectation that their communications were not subject to interception, citing In re Application for Warrants to Obtain Comm'ns from Twitter, Inc., 448 N.J. Super. 471, 475 (App. Div. 2017).

The panel, however, split on the legality of the seizure of the police station call. The panel majority affirmed the suppression of that call, finding that the seizure of the McQueen/Allen-Brewer conversation violated the Fourth Amendment of the United States Constitution. The majority determined that (1) McQueen demonstrated a subjective expectation of privacy by "deliberately lowering his voice so an officer . . . would not overhear" his conversation with Allen-Brewer, (2) McQueen and Allen-Brewer's "expectation of privacy was reasonable in the absence of any warning" that the call would be recorded, and (3) their expectation of privacy "should be one 'that society is prepared to recognize as reasonable,'" quoting State v. Evers, 175 N.J. 355, 369 (2003).

In support of that position, the majority distinguished a police station from a correctional institution and noted that ordinary citizens are frequently present in police stations for a variety of reasons, including as applicants for gun permits and as victims or arrestees accompanied by family and friends. The majority believed that, in the absence of notice, such individuals would reasonably assume that their telephone calls from the stationhouse are private and not taped. The majority declined to "reach the question of whether the recording of the call would violate the Wiretap Act."

11

The dissenting judge had a different view. In his opinion, the general public has "knowledge that police department telephones are recorded," and, therefore, it would be unreasonable for anyone using a stationhouse landline -- especially an arrestee waiting to be transported to a county jail --to expect the call to be private. On that basis, the dissenting judge determined that society is not prepared to recognize as reasonable "McQueen's expectation that his conversation on a police station telephone [would be] private," even in the absence of notice that his call would be recorded. Similarly, he stated that Allen-Brewer "could not reasonably have expected that her conversation with McQueen . . . would be private" when she undoubtedly knew he was in custody. Last, he concluded that neither the Federal nor State Wiretap Act prohibited the police from recording a call placed from the stationhouse or disclosing it to the prosecutor.

D.

The State filed a motion for leave to appeal from the appellate panel's affirmance of the suppression of the police station call, relying primarily on the opinion of the panel's dissenting member. See R. 2:2-2(a).[7] Allen-Brewer

---

[7] When there is a dissent in the Appellate Division on an issue arising from a final judgment, an appeal may be taken to this Court "as of right." R. 2:2-1(a)(2). Here, because the charges against Allen-Brewer were reinstated, the appeal was interlocutory, requiring the filing of a motion for leave to appeal.

12

filed a protective cross-motion for leave to appeal -- in the event we granted the State's motion -- seeking to have this Court declare that the Correction Center calls were the "fruit" of the unlawfully recorded police station call.[8] We granted the State's motion and denied Allen-Brewer's cross-motion. 244 N.J. 244 (2020); 244 N.J. 245 (2020).

We granted the motions of the American Civil Liberties Union of New Jersey (ACLU), the Association of Criminal Defense Lawyers of New Jersey (ACDL), and the Seton Hall University School of Law Center for Social Justice (Center for Social Justice) to participate as amici curiae. The Attorney General of New Jersey, who had participated as amicus curiae before the Appellate Division, retained amicus status.

## II.

## A.

The State and amicus Attorney General (collectively, the State), in large part, repeat the arguments advanced by the appellate panel's dissenting judge -- that McQueen (an arrestee), and by extension Allen-Brewer, had no

---

R. 2:2-2. A motion for leave to appeal may be granted "when necessary to prevent irreparable injury." R. 2:2-2(a).

[8] Neither the trial court nor the Appellate Division addressed the "fruit of the poisonous tree" argument raised by Allen-Brewer in her protective cross-motion before this Court.

reasonable expectation of privacy in a telephone conversation on a police station phone line that is commonly known to be recorded. The simple logic of the State's position is that because McQueen had no reasonable expectation of privacy in the telephone call, the recording of and listening to the conversation did not constitute a search, and because the police did not conduct a search, the police did not need a warrant to record or listen to the call. The State concedes that no published case in this state and few in other jurisdictions address the issue here but adopts the reasoning of the dissent that "[g]iven the general knowledge that police department telephones are recorded, notice is implied," citing Amati v. City of Woodstock, 176 F.3d 952, 955 (7th Cir. 1999), and other federal cases. The State also reasons that the recording of the McQueen/Allen-Brewer conversations falls within what it characterizes as "the 'plain hearing' exception to the warrant requirement."

The State, moreover, contends that the same interest in promoting institutional security and public safety that animated the decision in Jackson, which upheld the recording of calls from a county jail (albeit with notice to inmates), justifies the recording of calls from a police station. Last, the State maintains that Allen-Brewer possesses no greater privacy rights in the telephone conversation than McQueen. Thus, if McQueen made the conversation available to law enforcement through his voluntary use of a

14

stationhouse phone line, then Allen-Brewer's misplaced confidence in the privacy of that conversation is not conferred constitutional protection.[9]

## B.

Allen-Brewer and supporting amici (the ACLU, ACDL, and Center for Social Justice) echo many of the points made by the panel majority. They assert that the recording of the McQueen/Allen-Brewer conversation without consent, a warrant, or a valid exception to the warrant requirement violated both the Federal and State Constitutions. They collectively maintain that this state's constitutional jurisprudence provides heightened protection to telephone calls in many different settings, and that such protection should extend to a police station phone call made by an arrestee without notice that his conversation will be recorded. They assert that no empirical evidence has been presented that social norms do not give rise to an expectation of privacy in an arrestee's call from a stationhouse.

---

[9] We do not address the Attorney General's argument that the routine recording of police station phone lines does not violate the New Jersey or Federal Wiretap Acts. The issue on which the members of the appellate panel differed and on which this Court granted leave to appeal was the constitutionality of the recording of and listening to the McQueen/Allen-Brewer stationhouse conversation without consent, a warrant, or an exception to the warrant requirement. See Bethlehem Twp. Bd. of Educ. v. Bethlehem Twp. Educ. Ass'n, 91 N.J. 38, 48-49 (1982) ("[A]s a general rule an amicus curiae must accept the case before the court as presented by the parties and cannot raise issues not raised by the parties.").

15

Indeed, Allen-Brewer and amici suggest that the public's understanding is that an arrestee in police custody has the right to one free call -- to an attorney, a loved one, or a friend -- to seek advice or comfort, without fear of eavesdropping by law enforcement. They underscore that it would be incongruous that arrestees would have less privacy protection in a police station call than inmates in a county jail, who are given notice that their telephone calls are recorded, citing Jackson.

Allen-Brewer and amici note that whatever institutional security concerns law enforcement may have are harmonized with constitutional concerns by warning arrestees and others using a police line that calls are recorded and may be monitored. They also reject the argument that the plain-hearing exception to the warrant requirement applies, emphasizing that McQueen spoke with his voice lowered to keep his communication private and that no officer overheard the conversation.

Last, they insist that Allen-Brewer's reasonable expectation of privacy from governmental intrusion is independent of and different from whatever privacy rights McQueen possessed at the police station. If the suppression of the police station call is upheld, Allen-Brewer claims that the Correction Center calls must be suppressed as fruit of the poisonous tree.

16

III.

A.

The only issue before the Court is the one on which the appellate panel divided: whether Allen-Brewer had a constitutionally protectible privacy interest in her conversation with McQueen, who called her on a police line from the stationhouse after his arrest.[10] The resolution of that issue depends on whether Allen-Brewer had a reasonable expectation of privacy in that call and, if she did, whether the non-consensual and warrantless recording of and listening to her conversation by law enforcement officers violated the constitutional right to be free from unreasonable searches and seizures.

For many decades, "New Jersey has had an established policy of providing the utmost protection for telephonic communications." State v. Hunt, 91 N.J. 338, 345 (1982). Consistent with that policy, this Court has charted a different path from federal law and conferred greater privacy

---

[10] Typically, a court would first determine whether the non-consensual and warrantless taping of the McQueen/Allen-Brewer conversation violated either the Federal or State Wiretap Acts and only, if necessary, address the constitutional issue. Comm. to Recall Robert Menendez From the Off. of U.S. Senator v. Wells, 204 N.J. 79, 95 (2010) (noting that courts "strive to avoid reaching constitutional questions unless required to do so"). Here, the majority of the appellate panel decided not to resolve the statutory question, and the panel divided on the constitutional question. We accept the case as it comes before us and address the issue on which this Court granted leave to appeal.

17

protections to telecommunications under the New Jersey Constitution.  See, e.g., State v. Lunsford, 226 N.J. 129, 155 (2016) (telephone billing records); State v. Earls, 214 N.J. 564, 587-88 (2013) (cell-phone location data); State v. Reid, 194 N.J. 386, 399 (2008) (internet subscriber information); Hunt, 91 N.J. at 348 (telephone billing records).

In recognizing that the New Jersey Constitution "may be a source of 'individual liberties more expansive than those conferred by the Federal Constitution,'" State v. Novembrino, 105 N.J. 95, 144-45 (1987) (quoting Pruneyard Shopping Ctr. v. Robins, 447 U.S. 74, 81 (1980)), we have construed Article I, Paragraph 7 of our State Constitution more broadly than its Fourth Amendment counterpart in ensuring "a person's reasonable expectation of privacy from untoward government intrusion," particularly within the sphere of telecommunications.  See State v. Manning, 240 N.J. 308, 328 (2020); see also N.J. Const. art. I, ¶ 7 (guaranteeing "[t]he right of the people to be secure in their persons . . . against unreasonable searches and seizures").

Indeed, under our state constitutional jurisprudence -- unlike the federal approach under the Fourth Amendment -- we apply an objective test to determine whether individuals have a reasonable expectation of privacy in the matter in question.  See State v. Hinton, 216 N.J. 211, 236 (2013) ("Unlike the federal test, the New Jersey constitutional standard does not require the

18

defendant to prove a subjective expectation of privacy.").  The "streamlined" objective inquiry under Article I, Paragraph 7 simply asks whether the individual's expectation of privacy is reasonable.  Ibid.  In other words, is the individual's expectation of privacy one that "society is prepared to recognize as reasonable?"  See Evers, 175 N.J. at 369 (quoting Katz v. United States, 389 U.S. 347, 361 (1967) (Harlan, J., concurring)).

Given the lack of certainty in this area of federal law, we turn to the broader protections afforded under Article I, Paragraph 7 of our State Constitution in analyzing whether McQueen and Allen-Brewer possessed a reasonable expectation of privacy in the police station call.

B.

We have long realized that the telephone is "an essential instrument in carrying on our personal affairs."  Hunt, 91 N.J. at 346.  "When a telephone call is made, it is as if two people are having a private conversation in the sanctity of their living room.  It is generally understood to consist of a conversation between two persons, no third person being privy to it in the absence of consent."  Ibid.

The general societal "assumption [is] that the people and places one calls on a telephone, no less than the resulting conversations, will be private.  The place where such a call is made does not matter, be it home, office, hotel, or

19

even public phone booth." State v. Mollica, 114 N.J. 329, 344 (1989) (emphasis added) (citing Katz, 389 U.S. at 351-52). "The telephone caller is 'entitled to assume that the words he utters into the mouthpiece will not be broadcast to the world.'" Hunt, 91 N.J. at 346-47 (quoting Katz, 389 U.S. at 352).

It follows that "what [a person] seeks to preserve as private, even in an area accessible to the public, may be constitutionally protected" and that a person does not lose the right to the privacy of a telephone call "simply because he made his calls from a place where he might be seen." Katz, 389 U.S. at 351-52; see also Mollica 114 N.J. at 344 ("[A]n expectation of privacy . . . consists of a belief that uninvited people will not intrude in a particular way." (alteration and omission in original) (quoting United States v. Lyons, 706 F.2d 321, 326 (D.C. Cir. 1983))). It is "not the ownership or possessory right to the telephone, nor even its location, as such, that creates the expectation of and entitlement to privacy; rather, it is the use of the telephone to engage in private and personal conversations that implicates the privacy protection." Mollica, 114 N.J. at 342.

However, "[i]f one party makes the conversation available to others, such as through the use of a speaker phone or by permitting someone else to hear . . . the privacy interest does not remain the same." Hunt, 91 N.J. at 346.

20

A person can hardly claim a reasonable expectation of privacy in a matter that the "person knowingly exposes to the public." See State v. Stott, 171 N.J. 343, 354 (2002) (quoting Katz, 389 U.S. at 351). Additionally, an individual's "misplaced confidence" in a person who consents to share a conversation or information with the government is not protected by Article I, Paragraph 7. See Evers, 175 N.J. at 370.

## C.

Merely because a person has a protectible privacy right in a telephone call placed from a home, an office, a motel, or a telephone booth does not necessarily mean that an arrestee has the same privacy right in a call placed from a police station. A police station's "report writing room" is not an area open to the public, and legitimate security concerns must be taken into account in the setting of a stationhouse.

Few would dispute that an arrestee has a lesser expectation of privacy within the confines of a police station. Certainly, an arrestee does not have freedom of movement. A police station, however, is not a constitution-free zone. An arrestee is free to exercise his constitutional rights in a stationhouse, such as invoking the right to remain silent or requesting the assistance of counsel. Miranda v. Arizona, 384 U.S. 436, 444 (1966). Within a stationhouse, a juvenile taken into custody has a right to consult in private with

a parent who is present -- outside of earshot of the attending officers -- before the police attempt to commence questioning. State in Interest of A.A., 240 N.J. 341, 345 (2020) (stating that juveniles should be advised "of their Miranda rights in the presence of a parent or guardian before the police question, or a parent speaks with, the juvenile," and afterwards, "[o]fficers should then let the parent and child consult in private." (emphasis added)).

Clearly, an arrestee cannot make a call from a stationhouse phone line without the authorization of the police. When permission is given, however, the State does not suggest that the police have a right to record and listen to an arrestee's stationhouse call to his attorney. An arrestee, in custody and cut off from the world, may have understandable and mundane reasons for making a stationhouse call, such as to ask a parent to hire an attorney, or a spouse to contact an employer, or a friend to arrange for childcare. And, of course, the phone lines are not used exclusively by arrestees. A crime victim or witness, or those who accompany them to the stationhouse, may use the same police phone line as McQueen. A stationhouse call may be placed for other than nefarious reasons.

No empirical evidence has been presented to support a presumption that there is a general understanding among the public, at least in New Jersey, that all outgoing phone lines from a police station are recorded or that social norms

22

instruct that an expectation of privacy in a police station call is not one that "society is prepared to recognize as reasonable." See Evers, 175 N.J. at 369 (quoting Katz, 389 U.S. at 361 (Harlan, J., concurring)).

Nevertheless, the State urges the Court to impute notice to the general public based on a handful of federal cases, which are largely distinguishable (if not helpful to Allen-Brewer) and, in the end, have no dispositive bearing on the protections guaranteed by our State Constitution. See Amati, 176 F.3d at 955; see also Siripongs v. Calderon, 35 F.3d 1308, 1319 (9th Cir. 1994); Adams v. City of Battle Creek, 250 F.3d 980, 984 (6th Cir. 2001); United States v. Correa, 154 F. Supp. 2d 117, 123 (D. Mass. 2001).

In Amati, current and former police department employees, and their friends and family members, brought a civil lawsuit alleging that the department violated the Federal Wiretap Act and the Fourth Amendment by recording their personal calls on outgoing police station lines without their knowledge. 176 F.3d at 954-56. The United States Court of Appeals for the Seventh Circuit construed a provision of the Federal Wiretap Act, which permits the recording of police lines "by an investigative or law enforcement officer in the ordinary course of his duties." Id. at 954 (emphasis added) (quoting 18 U.S.C. § 2510(5)(a)(ii)). The Seventh Circuit held that the recording of "calls to and from a police department is . . . a routine police

23

practice" and that express notice of the recording was not required because "what is ordinary is apt to be known; it imports implicit notice." Id. at 955.

What may be "ordinary" for police department employees and their family members, however, is not necessarily "ordinary" for the general public. Amati does not suggest otherwise. In addition, apparently not all federal courts, at least in the 1990s, were in agreement with Amati that all police officers were on notice that every outgoing call from a stationhouse was recorded. See e.g., PBA Local No. 38 v. Woodbridge Police Dep't, 832 F. Supp. 808, 814, 819-20, 836 (D.N.J. 1993) (declining to dismiss the complaints of some plaintiff police officers, who alleged lack of knowledge that their private conversations were recorded); In re State Police Litig., 888 F. Supp. 1235, 1249 (D. Conn. 1995) (stating that "plaintiffs have established as a genuine issue whether any of the notification methods employed by defendants informed anyone that the State Police automatically recorded all outgoing as well as incoming calls").

The other cases cited by the State are distinguishable. In Siripongs, the defendant placed a call three feet from a police officer and spoke in Thai loud enough for his voice to be picked up by the officer and captured on his hidden recorder. 35 F.3d at 1320. The United States Court of Appeals for the Ninth Circuit essentially held that the defendant did not have a reasonable

24

expectation of privacy in a communication that could be overheard.  <u>Ibid.</u>  In contrast, no police officer here could overhear McQueen's conversation with Allen-Brewer.

In <u>Adams</u>, the United States Court of Appeals for the Sixth Circuit noted that, although "the routine and almost universal recording of phone lines by police departments and prisons" is permissible under the Federal Wiretap Act and "is well known in the industry and in the general public . . . , courts have ruled that even prisoners are entitled to some form of notice that such conversations may be monitored or recorded."  250 F.3d at 984.  Here, Allen-Brewer and McQueen were not afforded the kind of notice contemplated by <u>Adams</u>.

Last, in <u>Correa</u>, the United States District Court for the District of Massachusetts held that the defendant did not have a reasonable expectation of privacy in a telephone call to a co-conspirator that was overheard by a police officer "standing nearby."  <u>See</u> 154 F. Supp. 2d at 120-21, 123.  Again, the McQueen/Allen-Brewer conversation was not overheard by a nearby officer.

None of those cases cited by the State support the proposition that the general public is aware that a call made by a civilian on an outgoing line can be recorded <u>without notice</u>, or that a call that cannot be overheard by an officer

through natural means loses a reasonable expectation of privacy because of a non-consensual recording on a police line.

D.

We reject the State's argument that the surreptitious recording of the McQueen/Allen-Brewer conversation falls within the ambit of the so-called "plain hearing" exception to the warrant requirement. We acknowledge that, generally, if a "defendant speaks loudly enough to be overheard his expectation of privacy vanishes" and that a police officer listening to what he can naturally hear -- without an enhanced listening device -- acts within the permissible confines of the Federal and State Constitutions. See State v. Constantino, 254 N.J. Super. 259, 265-68 (Law Div. 1991).

However, in the case before us, no police officer heard through the use of the naked ear either side of the McQueen/Allen-Brewer conversation. Their conversation was not heard by the police in real time but only later because -- without notice to either party -- their conversation was recorded on a police line. Although this Court has yet to directly address the metes and bounds of the plain-hearing doctrine, whatever the ambit of that doctrine may be, the surreptitiously recorded conversation in this case does not fall within it.

26

E.

We also conclude that <u>Jackson</u> offers no support for the State's position. In that case, inmates in the Essex County and Middlesex County correctional facilities were advised by written notice as well as by a voice message at the beginning of every telephone call that their conversations might be recorded or monitored.[11] 460 N.J. Super. at 266. The Prosecutor's Office issued grand jury subpoenas to both facilities for phone calls made by the defendant inmates. <u>Id.</u> at 267-68. The Appellate Division held that the inmates did not possess a reasonable expectation of privacy in their calls under either the Fourth Amendment or Article I, Paragraph 7 of our State Constitution.

The Appellate Division reasoned that "the correctional facilities' interest in maintaining institutional security and public safety outweighs the right to privacy asserted <u>here</u>." <u>Id.</u> at 276 (emphasis added). The use of "here" denotes the recognition that the inmates in the two facilities knew that they were "being monitored and recorded when speaking on the phone" and therefore retained no "reasonable expectation of privacy." <u>Ibid.</u> The Appellate Division's holding that the defendant-inmates had no reasonable

---

[11] The protocols at both facilities carved out an exception to the recording and monitoring policy for calls made to attorneys or internal affairs. <u>Jackson</u>, 460 N.J. Super. at 266.

27

expectation of privacy in their calls was premised on two critical factors: the correctional facilities' legitimate security interests and the notice given to inmates that their calls might be recorded and monitored. Id. at 276-77.

IV.

A.

In the case before us, we conclude that, under Article I, Paragraph 7 of the New Jersey Constitution, an arrestee has a reasonable expectation of privacy in a call made from a police station in the absence of notice that the conversation may be monitored or recorded. We come to this conclusion for a number of reasons.

First, our State Constitution confers on New Jersey residents the "utmost protection [in their] telephonic communications," see Hunt, 91 N.J. at 345, from wherever the call is placed; "it is the use of the telephone to engage in private and personal conversations that implicates the privacy protection," Mollica, 114 N.J. at 342. Police monitoring of telephone conversations -- without consent, a warrant, or other appropriate judicial authorization -- empowers the government to arbitrarily peer "into the most private sanctums of people's lives" in violation of the privacy protections afforded by Article I, Paragraph 7. See Manning, 240 N.J. at 328.

28

Second, the State has provided no factual support and scant judicial authority for the notion that New Jersey's residents have a widespread understanding that all outgoing telephone calls from a police station are recorded. Such recordings would capture not just the private conversations of arrestees, but also highly personal conversations of crime victims, witnesses, and others who happen to find themselves in a stationhouse. Whatever notice may be "implied" in the case of police officers who use recorded police lines, see Amati, 176 F.3d at 955, cannot be implied in the case of civilians who do not frequent a police station.

Additionally, as noted in the brief filed by Seton Hall's Center for Social Justice, it may well be that the general belief, as reflected in popular culture, is that an arrestee typically can make one free call from the stationhouse -- without an officer eavesdropping into that private conversation -- which could be to a lawyer, a loved one, or a trusted advisor. Consumers who commonly engage in commercial transactions, moreover, expect that if their conversations are taped, they will hear a beeping sound or an announcement that the call may be recorded. If we attributed to New Jersey residents an awareness of the protocols in correctional facilities, such as those in Essex County and Middlesex County, where inmates are given double notice that outgoing calls are monitored or recorded, would those residents not think a

police station would give some form of notice to arrestees before recording their conversations?

Third, institutional security and public safety are legitimate concerns for a police station, just as they are for a correctional facility. Surely, if giving notice in correctional facilities to inmates that their calls may be monitored or recorded will not compromise security or public safety in those institutions, it is difficult to imagine that some reasonable notice to arrestees will undermine security in a police station. It is the monitoring or recording that provides the guarantee of security; notice does not undermine and may enhance that objective by deterring the unlawful use of the stationhouse line.

Fourth, the right to notice -- if there is monitoring or recording of telephone conversations by police at the stationhouse -- accords with basic notions of fairness and decency. An arrestee transported to a police station, who is in custody and given the opportunity to make a telephone call, would naturally reach out to a family member or friend (if not an attorney) for advice, support, or comfort.[12] The warrantless and surreptitious monitoring or

---

[12] Monitoring of an arrestee's call to a lawyer is constitutionally forbidden, regardless of notice. See State v. Sugar, 84 N.J. 1, 13 (1980). An arrestee cannot be given the unpalatable choice of speaking with an attorney in the unwelcome presence of a police officer or on a recorded line, or not speaking with an attorney at all.

30

recording of calls of an arrestee who is presumed innocent does not comport with the values of privacy that are prized in our free society. McDonald v. United States, 335 U.S. 451, 453 (1948) ("[T]he right of privacy [is] one of the unique values of our civilization and, with few exceptions, stays the hands of the police unless they have a search warrant issued by a magistrate on probable cause supported by oath or affirmation.").

Fifth, we do not determine whether an arrestee has a reasonable expectation of privacy in a telephone conversation by examining the nature of the conversation after the police have eavesdropped. United States v. Di Re, 332 U.S. 581, 595 (1948) ("[A] search is not to be made legal by what it turns up. In law it is good or bad when it starts and does not change character from its success." (footnote omitted)); McDonald, 335 U.S. at 453 ("[The] guarantee of protection against unreasonable searches and seizures extends to the innocent and guilty alike."). The fruits of an unlawful search cannot provide an after-the-fact justification for the search. That some individuals will use the telephone for unlawful purposes -- whether the telephone is located in a home, a business, or even a police station -- cannot be determinative of whether people generally have a constitutional right to the privacy of their conversations, free from government intrusion.

31

Sixth, we find that McQueen and Allen-Brewer had an expectation of privacy in their conversation that "society is prepared to recognize as reasonable." Evers, 175 N.J. at 369 (quoting Katz, 389 U.S. at 361). Allen-Brewer's expectation of privacy is largely derivative of McQueen's privacy right. If McQueen had been placed on notice that his call might be monitored or recorded and proceeded to make the call -- an implied consent scenario -- then Allen-Brewer's misplaced confidence in McQueen's judgment would not necessarily confer on her an independent right of privacy. Id. at 370 ("There is no constitutional protection for misplaced confidence or bad judgment when committing a crime.").

B.

Our holding that McQueen and Allen-Brewer enjoyed a reasonable expectation of privacy in the police station call means that the Piscataway police had to comply with the warrant requirement of Article I, Paragraph 7, in the absence of one of the "specifically established and well-delineated exceptions to the warrant requirement," such as consent or exigent circumstances. See Manning, 240 N.J. at 328 (quoting State v. Hemenway, 239 N.J. 111, 126 (2019)). "Because . . . searches and seizures without warrants are presumptively unreasonable, the State bears the burden of

32

demonstrating by a preponderance of the evidence that an exception to the warrant requirement applies." Id. at 329.

Here, the Piscataway police did not secure either a warrant for the seizure of the recorded conversation or McQueen's or Allen-Brewer's consent to monitor or record their call. Nor has the State attempted to justify the seizure based on exigent circumstances. Therefore, the McQueen/Allen-Brewer stationhouse conversation must be suppressed.

To be clear, police departments that record or monitor outgoing calls of arrestees must give them reasonable notice of that practice. Reasonable notice may be satisfied in different ways. For example, the police could have an arrestee read and sign a form that explains the practice or could post a prominent sign by the telephone. Those examples are not intended to suggest that other methods would not be equally or more effective. Of course, forms or signs must take account of language differences, and attorney conversations may not be monitored.

## V.

In accordance with our long-standing jurisprudence under Article I, Paragraph 7, we affirm the judgment of the Appellate Division upholding the suppression of the recording of the McQueen/Allen-Brewer stationhouse

33

conversation.  We remand to the trial court for proceedings consistent with this opinion.


CHIEF JUSTICE RABNER and JUSTICES LaVECCHIA, PATTERSON, FERNANDEZ-VINA, SOLOMON, and PIERRE-LOUIS join in JUSTICE ALBIN's opinion.